is Hermann v. Runge. Counsel? May it please the Court, Counsel? My name is Tom Leach, and I represent the appellants in this matter, H. Carl Runge Jr. and the law offices of H. Carl Runge Jr. This case is brought to you pursuant to Supreme Court Rule 301. And what I'm here to ask this Court to reverse the trial court's decision granting summary judgment on Count 1 of the appellant's complaint, which was a complaint for breach of contract, wherein the trial court awarded damages on the breach of contract, on the amount of $213,134. Also, I'm here to ask the Court to affirm the trial court's denial of pre-judgment interest on that amount, and affirm the Court's finding of summary judgment against the Hermanns on Count 3, a fraud count. As far as background on this case, this is a case where Attorney H. Carl Runge represented the Hermanns, the plaintiffs in this case, in a car accident case in Tennessee. Apparently what happened was there was a one-year statute of limitations in Tennessee. Attorney Runge failed to file within that statute of limitations, ultimately attempted to file the case in federal court in Mississippi, and it ultimately ended up in the Fifth Circuit Court of Appeals. While the case was pending in the Fifth Circuit Court of Appeals, the parties all signed a document entitled Interim Agreement. That document on its face provided a number of things, including the fact that the parties desired to enter into an agreement whereby Attorney Runge would obligate himself to the Hermanns in certain sums as specified until the appeal in the federal court was resolved. And Runge claims that's not an enforceable contract. Is that right? Our position here is there's not – I mean, yes. Okay. Who drafted the agreement? Apparently an associate of Mr. Runge. I would note at this point that at that time Mr. Hermann and Mrs. Hermann were at least up until that point represented by counsel, independent counsel. They had an opportunity to take this agreement to counsel. But it was, in fact, drafted by an associate of Mr. Runge's who I believe was also a friend of Mr. Hermann's. I don't know if the record carries that out or not. The agreement also provided that after the appeal was resolved against the Hermanns, a formal contract would be entered. That formal contract would identify whatever liability Runge had to the Hermanns, it would fix those damages, and it would provide a schedule for the payment. Now, that interim agreement obligated Runge to do each of the following. He was to pay $10,000 in relatively short order out of some settlement proceeds that they had discussed at apparently the time or shortly before the execution of the statute. He was to pay $2,500 per month during dependency of the agreement, and he was to pay during dependency of the agreement 20% of any fee he got in excess of $25,000. Finally, he was to take steps to provide a policy of life insurance with the Hermanns' name as beneficiaries. There's two major reasons that, independent of each other but perhaps intertwined, that summary judgments should not have been entered on this breach of contract claim. First, in looking at the agreement and all the evidence that's in the record, there's simply no consideration on behalf of the Hermanns. Second, even if there was consideration, the Hermanns have failed to perform whatever their obligation was. Did you represent him in the first appeal to this court? I did, Your Honor. Okay. I mean, in that first appeal we wrote, on June 10th, 1994, plaintiffs and defendants entered into a written contract to compensate the plaintiff for the loss of their negligence claim. Well, isn't that the consideration? I mean, the court previously found, I don't know if it's explicitly or what, that that was the exchange for the money. I'm not certain that that was what was being explored in that appeal. My recollection of that appeal, and I looked at it a few days ago, was that you were looking at a very narrow issue as to whether the interim agreement had lapsed when the appeal in the underlying case was decided. Well, we've got it in there. Pursuant to these terms, we find that because no formal contract was entered into, the provisions and obligations under the interim contract do not terminate until the payment reaches the amount of $480,000. So it would appear that we reached the issue of whether there was a contract and how much would have to be paid to satisfy it, and that's already been litigated. I'm not sure. I'm not certain if that's... Okay. If the issue of consideration was explicitly covered in that and argued and so forth. Well, he's got, Mr. Runge testified that he entered into the interim agreement as payment plan due to his failure to file a lawsuit within the statute of limitations. That sounds like a consideration. Well, it sounds like, I mean, that's part of the evidence here, but if you look at the agreement closely and you look at it, what I'm talking about is when you look at Count 1, it's barren of any promises of forbearance. It's barren of any promise of performance. There's simply, on its face, Count 1 doesn't say the Hermans have any obligation to do anything. When you look at that agreement itself, it doesn't say that the Hermans can't sue. If you look at that agreement, that agreement provides within it that even during the pendency of this appeal, the Hermans could have sued Runge. The plain language of the agreement... The agreement, though, says that should the appeal be resolved against the Hermans, then a formal contract shall be entered into. That's correct. And the appeal wasn't against the Hermans. No, the appeal was, in fact, found ultimately against the Hermans. I think it was some 17 days after this agreement was entered into. It was a very short time after. But in the very last paragraph of the agreement, it says, Nothing in the agreement is construed as an admission of liability, a stipulation of damage amounts by the law of the state's car running junior limit, nor is it to be construed as acceptance or release of liability of Ralph and Renee Herman. That seems to say that you're not foreclosed from doing anything. They could sue him. He'd get a credit for any payments he made. But if they decided $480,000 was enough, they'd forego their lawsuit. I think that... I mean, I don't know if that jives with the four corners, at least my reading of it. It's kind of like a high-low. Go ahead. I'm not sure that was the intention. The problem with the whole thing, as the court can see, is that it's completely unclear. It's very bad. It's not well-drafted. And the only thing I'm happy about is I didn't do it. I don't understand. Was there any lawsuit filed against Mr. Ryan, any legal malpractice? There was not a legal malpractice lawsuit filed. Let's come back here. You said that Herman's lost on appeal. I'm talking about in the Fifth Circuit. Oh, down in... Yeah, yeah. I was on the agreement, which provides that if in the Fifth Circuit in that car accident case, if it's found against them... That has nothing to do with this interim agreement that talked about the appeal... In the Fifth Circuit? In the Fifth District. No, no. I'm down in New Orleans. I know, but this agreement, doesn't this agreement deal with the appeal to this court? No, no. No, this agreement... It does not. It specifically says... I misread it. Lawsuit H.R. Ryan Jr. Limited obligates itself to Ralph and Renee Herman in the sum specified below on an interim basis until such time as the appeal currently pending in the Fifth Circuit Court of Appeals. If we do make a stretch to say that there is consideration, and the consideration is that the Hermans will agree or promise to enter into a formal agreement, then the position that we take is that they didn't do that. They didn't make any effort to do that. Therefore, they didn't perform under this agreement. So basically, from our position, there's a lack of consideration, and they failed to perform, I respectfully request that this court reverse the circuit court's decision on that matter. The next issue is the issue of the matter of pre-judgment interest. That's a matter that's within the sound discretion of the trial court and shouldn't be reversed absent abuse of discretion. The court can deny pre-judgment interest if there are legitimate arguments regarding the existence or enforceability of the contract or the amount of damages is not easily ascertainable. Now, in this case, I think that the position that the judge took, and I think the position is right, is that the damages are not easily ascertainable. I mean, if we say $480,000, that's easy to ascertain. But what's due at any particular time is what's important. And in this case, I think the appellees argue that, well, all we've got to do is take $2,500 a month until it's paid up, and then that's where we get the interest. But there's other things that are involved here, and those things have to be considered. I think it's similar to a case, Cushman and Wakefield of Illinois v. Northbrook, where the plaintiff, Cushman, brought an action against the defendant to recover leasing commissions. The commissions awarded were disputed by the defendants, and the amount of commissions the defendant collected were based on a number of different factors, such as the amount of rent, the length of the lease, and the procuring broker. The court found that it's hard to calculate these, so pre-judgment interest isn't appropriate. Here we've got the $2,500 payments. We've got the payments out of commissions. We've got this insurance contract that we don't, I mean, I don't know how you calculate the value of that. And we've got this original $10,000 payment. All those things considered make the calculation or the determination of payments when they were due and how much they should have been just not easily ascertained. And therefore, pre-judgment interest isn't appropriate. Finally, with regard to count three, the fraud count, I'm asking this court to affirm the trial court in that. On that issue, the Hermans apparently have pled that Carl Ruggie frauded them by setting them in a situation where he told them he'd pay them $480,000 over a period of time. Then he paid it until it was too late for the Hermans to file a malpractice case because the statute of limitations and the statute of repose had expired. That doesn't square with the evidence that's in the record here. I mean, just on its face, there's no evidence that when he signed, well, I mean, the agreement itself sort of indicates that maybe I'm not going to pay $480,000. Maybe it's something different. There's a number of things in the agreement itself that say that. But even more important than that, that the actual facts of the case attached to the complaint is a register of the payments. If that were the plan and the evidence supported that plan, the statute of limitations, I think, ran in 1990, 1996. The statute of repose ran in 1996. Payments were made up until 2003. I mean, that's seven years beyond when they could have filed the malpractice case. It just doesn't square with them trying to fraud you out of this money. I mean, maybe you make a couple extra payments to keep them calm so they don't file a fraud action, but you don't pay for seven years the vast majority of this contract if it was a contract. That's the best that it is. He can't turn a contract case into a fraud case. Any questions? I believe so. Thank you, Counsel. Counsel? Please, the Court. Counsel. My name is George Ripplinger. I'm here representing the Hermans today for the second time in front of this Court. And listening to essentially the same arguments for the second time before this Court. I believe Justice Donald was correct when he read the mandate from this Court. This decision has been made already that this was a valid contract and that there are no issues currently before this Court. Before I go into the actual arguments made by Counsel, I'd like to clarify one interesting fact, and that is that the interim agreement decided that a new contract would be entered into after the decision by the Fifth Circuit Court of Appeals. Point of fact, the Fifth Circuit Court of Appeals dismissed the appeal on May 19, 1994. This contract was signed on June 10, 1994. So even in the recitation of When Things Look, there's no truth in this contract. It had already been done. Now, the arguments raised, I think, were specious. They were specious. The last, for example, saying that the Hermans did not perform their part of the contract because they didn't sue Carl Ehrman for malpractice is absurd. There's no obligation to sue him in malpractice. The only thing this contract talks about is if, in fact, a lawsuit is later filed, that he would get credit for amounts paid. There are no requirements for Hermans to file a suit to make this contract complete. The contract was clear. It's not ambiguous whatsoever. The only ambiguity deals, if any, deals with whether or not there was a later agreement. This court took care of that situation in the last appeal. Since there was no subsequent agreement, the interim agreement controlled, and it requires him to pay $2,500 a month and a good total of $480,000. The consideration, I think, is also clear. This court seems to understand it very clearly. The consideration was not suitable for malpractice, not perhaps taking a larger judgment and not embarrassing him in the local community by filing such a lawsuit. They did not do so. They left up their part of the contract, and summary judgment was certainly incorrectly entered in this matter. There was no other defense. Carl admitted that he entered into the contract. He admitted how much he paid. That's all there is to it. There was no issue for a prior effect to decide. Now, as to the account for fraud, we believe that that was improperly awarded because the court had to make a factual determination, which the court shouldn't do in making a summary judgment. Where a false promise or representation of future conduct is a scheme or a device to accomplish a fraud, it's enough to state that it's a case of fraud. An intent may be inferred from the conduct. Here, the payments were made and then stopped after the lawsuit was fully impossible to bring against Mr. Brown. You're not saying a summary judgment can be issued on a factual issue if it's done as a matter of law, that no reasonable jury could ever differ on the conclusion. So just the mere fact that it was a factual determination doesn't preclude a summary judgment, does it? I would agree with you, except in this case there has to be inferences made, and that's weighing the evidence, and that's a whole different ballgame. I don't believe that the court could say that no jury could infer fraud from the conduct alleged in the complaint, given the purpose of the contract and the actions of Mr. Runge in stopping payment when he said that they had enough. I think if there's enough there that a jury could decide, I think that requires a weighing of evidence as opposed to finding that no jury could ever find fraud in the facts of this case. As to the decision on the interest, I believe that also is an error and an abuse of discretion. I think it's particularly so where we're talking about a lawyer who has basically stiffed his clients on payment for the damage that he caused. As we all know, payments over time are worth less than payments at once, and when it takes this long to stretch them out, the payments are delayed, the amount that's actually being paid to the client is less than it was agreed to, and the interest should be allowed at 5 percent versus the pre-mint nominal amount. The court should have allowed the interest to make up for those delays in payment because it then made the contract worth even less than what the party agreed to pay. The amount is easily asked to pay. We know how much the payments are supposed to pay. We're not asking that anything be considered in the payments in this matter except the monthly payments of $2,500, and there were other acceleration portions. We're considering that those were not. We're not even asking that those be taken into consideration, the additional amounts for lawyer's fees, et cetera. If you just calculate it based upon the $2,500-a-month payments, it's easy to ascertain how much that would be. How many payments were remaining of $2,500? Well, you'd have to take the amount. And divide it. Just give me a rough number. Pick a rough number. Roughly $100. Okay, $100. So there are 100 different $2,500 payments due on 100 different dates. Correct. So are you calculating the interest based on 100 different dates? No, sir. We're calculating the interest from the date of last payment, actually, is how we're suggesting. So you're going to combine all? The date of last payment we're giving credit. We'd be more than happy to give you credit for the delays in the payments. But that's the same calculation, too. I apologize. You mean you would calculate interest from when the last payment was due? Yes, sir. Not when the last payment was made? No, the last payment was made until the date of judgment. Let me say that again. Are you asking from the date the last payment was made? You paid $2,500 on last payment on a certain date. We'd be willing to calculate it that way. You could calculate the whole delay and everything else. It's easy enough to do with a calculator. I know you could, but what are you asking for? It is the date of the last payment on the amount that is due as of that date until the date of judgment. Did he make the last payment on the date due? It was made on a date that was due. It was made late. Made late. Almost all the payments were made late after a certain point in time. Do you remember that date or that month? Just for our purposes, is it July of 2003? I should have that. We talked about calculating principal due since 12-31-01 was $16,000 due, $20,000 since 12-31-02, and $177,134.26 was due since 12-31-03. You're going too fast for it. When's the last day he made a payment? The last day that he made a payment, we believe, was 12-31-03. Okay. 12-31-2003. And if he had made all his payments, when would his last payment have been made? I don't even know. Okay. That's the date I'm trying to figure which one you want to start your prejudgment interest from. When you said when the last payment is due, you want to start when that last hundredth payment was made. That may be 2006 or something. I don't know. I'm just putting that date out there. That's easier to calculate. Except that if he hasn't made the payments, then they've been losing the interest on all that money. I don't disagree with you. I'm just talking about the ease of calculating the payment. If we're going to calculate it a hundred different times from a hundred different dates, that's more complicated. If you want to take it the really easy way, you can start from the date of his last payment. How much is still due? Because it was overdue at that point. Okay. On his last payment, he was still only behind by $2,500. No, he was behind more than that because he had missed payments in the interim. He made regular payments up to a certain point in time, and then the payments became irregular. Okay. But whatever amount he was behind, he wasn't behind the balance for the next 100 payments. He wasn't behind that, was he? He stopped making payments. He had a hundred more to pay. We were just using an easy number. Well, he wasn't behind on that. Now, you wouldn't ask to charge prejudgment on interest. He wasn't due to pay. If you take a look at the thing, on 12-31-01, he was behind by $16,000. 01. Okay. Got it. By 12-31-02, due to some additional payments that he made in that interim period, he was behind $20,000. His last payment, I believe, was made on 12-31-03. Okay. I believe at that time he was behind $177,134.26. We'll look at the record, I guess, and try to go from there. The payments are listed in the appendix. It's relatively clear what that is, and it can be calculated any way the court chooses to, but I think it should be calculated the way we suggested in our brief. Thank you, counsel. Counsel? Very, very briefly on the interest issue. I think with the payment history, we can figure out maybe when the last payment would have been due, but that's not really the calculation that's appropriate. You're going to ascertain the prejudgment interest. It would have to be all of it, and that just whatever. I mean, we can pull some. The easiest number is not necessarily the right number, and that's why we use it. I think that's what they say. If it's easily ascertainable. Do you just charge pre-interest on amounts that are due, though? Absolutely. In an installment sale contract, it's a little more complicated than it is in a lump sum. Yeah, you can't accelerate it. Okay. You said it. Thank you. Anything else? I don't believe so. Thank you. We appreciate the brief. Thank you, counsel.